8    125
68   391

## THE U. P. RAILWAY CO. v. PATRICK MCCARTY.

1. PRACTICE; *Issue; Pleadings; Proof.* A general denial, as an answer to an action on a judgment, does not put in issue the regularity of the proceedings on which the judgment was based, or the correctness of the judgment. The only inquiry that can be made on such an issue when the judgment is offered in evidence is, was such a judgment rendered, and had the court rendering it jurisdiction of the parties and the subject-matter.

2. RECORD; *Corporation; Appearance; Attorney; Presumption.* Where a record shows a judgment or decree against a corporation, and further shows that such judgment was rendered "by consent of the parties" to the action, there is no presumption that such consent was given by the *attorney* of the corporation, notwithstanding the rule that "there can be no appearance of a corporation in court but by attorney."

3. JUDGMENT, *Conclusive until Reversed; When entire.* Where a court has jurisdiction of the parties and the subject-matter its judgment is final and conclusive. And in those special cases where by statute the court is authorized "to make such orders, and take such other steps as will promote the ends of justice,"[4] a judgment entered "by consent of parties" is entire, even though the court erred respecting the mode of adjusting the compensation to be paid by one party to the other. In such case a party will not be permitted to insist upon a right secured by the judgment, and to repudiate the compensation required by the judgment to be made.

*Error from Leavenworth District Court.*

TRESPASS, brought by *McCarty.* The facts are as follows: In 1862 *The Union Pacific Railway Co., E. D.,* commenced proceedings in the district court to have the right of way condemned through the lands of *McCarty,* and some fifty other persons. The proceedings were commenced and prosecuted under the provisions of §§ 8 and 9, ch. 86, Territorial Laws of 1855, pp. 916, 917. Viewers were appointed, and their report was filed February 2, 1863. They assessed the damages to *McCarty's* land at $125. *McCarty* filed objections to the report. On the 24th of December, 1863, the matter "came on to be heard upon the objections of *McCarty* to the report of the commissioners heretofore appointed, and, by consent of the *Railway Company,* and said *McCarty,*" the court rendered a decree or judgment, whereby it appears that said sum of $125 in money was to be paid to *McCarty,* and the *Railway Company* should fence his land on both sides of the railway track before they commenced running their cars on their road. The *Railway Company* did not build the fences provided for in said judgment. They commenced running trains over their road in January 1866. In the summer of 1866, for want of fences along the railway track, *McCarty's* crops were exposed, and were trespassed upon by stock and injured; and his cattle strayed or passed from his land on said railway track and were killed by the passing locomotive or train of the company. The action below was brought by *McCarty* to recover for damage done to his crops, and for the value of the cattle so killed. The petition sets out the

substance of the above-mentioned decree, and bases the liability of the company upon their omission to construct the fences as therein required. The defense was that the *Railway Company* were not guilty of any negligence, and that plaintiff's cattle were unlawfully on the track of their road. The action was tried in February, 1869. On the trial *McCarty* gave in evidence, over the objection and exception of the company, the record of the above-mentioned judgment or decree of Dec. 24th, 1863. The company asked certain instructions which were refused. The court gave the following instruction, to which the company excepted:

" If in consequence of there being no fence along the line of the defendant's railway track, through plaintiff's premises, the plaintiff's cattle strayed on the track and were killed by the locomotive or train of defendant, then I charge you, the defendant became liable to the plaintiff for the value of that stock, and you should allow the plaintiff for his damages the value of the stock at the time it was killed."

The jury returned a verdict in favor of *McCarty*, assessing his damages at $320, for which sum he had judgment. A new trial being refused, the *Railway Company* bring the case here for review.

*J. P. Usher*, and *E. W. Dennis*, for plaintiff in error:

1. This action was based upon the decree of 24th December, 1863. The petition does not contain an exhibit of the decree as required by the code; (§ 127, code of 1862; § 118, code of 1868.) Nor is it alleged that the decree " was duly given or made;" (§ 130, code of 1862; § 121, code of 1868.)

The decree is void. Jurisdiction both of the parties and of the subject-matter is wanting. The proceedings were commenced against many persons jointly, while each held his lands in severalty. The lands of McCarty were not properly described.

The defendant is a corporation, and could only appear by attorney; and an attorney, inasmuch as it was not warranted by the petition, could not consent to the decree without a special warrant from the company. (Code of 1862, § 392, page 188.) As the Railway Company can act only by its agents,

and as it could not have an agent authorized to appear in court, unless he was an attorney of the court, it must be presumed that the consent was by an attorney of the court; and if the decree was a sequence of the proceeding to condemn the lands, and a part of it, we are to presume that the consent was by the attorneys of the company in that proceeding. Assuming all this to be true, we are to consider what authority the attorneys had. The record does not disclose any warrant of attorney, or special authority to them from the company; and all they could have had was that which their employment by the company to obtain the right of way pursuant to the charter necessarily gave them. For all that appears in this cause, those attorneys could not have bound the company to pay any sum of money for the right of way by virtue of any promise or agreement of theirs in behalf of the company. The only power they had to bind the company, was, that it should pay such judgment as might be rendered in dollars and cents, upon a report of viewers duly appointed. They could neither promise for the company that it should pay money nor build fences for the right of way; and if they could not directly bind the company by such agreements, they could not do so indirectly. The building and maintaining of sixty rods of fence on each side of the road, is a very serious matter—more than the damages to the land assessed by the viewers. The sum assessed by the viewers, if duly done, the company could not resist a judgment for. That the attorneys were employed to see rightfully done, but not to consent to anything more, or to make executory contracts by parol, and pass them into decrees, thereby undertaking to bind the company. See 36 Me., 149, 496; 2 Call, 498; 9 Humph., 84; 14 Serg. & Rawle, 307.

Again: The viewers were not disinterested. Among the persons named as owners refusing to relinquish the right of way, was Wm. S. Yorke, and the court appointed him one of the viewers to appraise the damages.

If the decree does not prove that there was a valid contract to build the fence, or that the *company* ever agreed to the entry of a decree that the company should build the fence, or

if the decree in that particular was extra-judicial for any reason, the case is with the Railway Company.

2. Even though the decree were valid, the company was not liable for the stock alleged killed by the passing cars, without proof of negligence.

If the defendant in error suffered any damage it was in consequence of his own negligence. He had notice that the company were running their cars; and if the decree was valid, and the company did not build the fence, he was bound to build it himself at the expense of the company. He could not stand by and see his cattle killed, and his crops injured, and then call on the company to pay for them.

The damages complained of are too remote. 3 Ohio St., 172; 2 Stark. Ev., 741; 7 Greenl., 38; 1 Iowa, 407; 17 Pick., 254; 23 Barb., 24.

*Wm. S. Carroll*, for defendant in error.    No brief on file.

The opinion of the court was delivered by

KINGMAN, C. J.: This was an action against plaintiff in error for damages accruing to the defendant in error from the Railroad Company's not fencing the land of McCarty, in accordance with a decree of the Leavenworth district court made on the 24th of December, 1863.

The central questions in the case, and the ones decisive of the merits, are, whether the record and decree in the case decided in 1863 was admissible in evidence; and if so, what effect was to be given to the decree. That proceeding was one commenced by the plaintiffs in error to have the right of way condemned through the land of the defendant in error, and many others, for the use of the railroad of plaintiffs in error. The proceeding was initiated and conducted under the provisions of sections eight and nine, ch. 86, (pp. 916, 917,) of the Ter. Laws of 1855. A petition was presented by the plaintiff in error to the district court alleging that McCarty and some fifty or more other named persons owned many tracts and lots of land, which were described, and that they refused to relin-

quish the right of way. Upon that petition the court appointed certain persons to view the premises, assess the damages, etc., and report. The report was made, and among many others, assessed the damages to McCarty for the land of his proposed to be taken by the said road at $125. McCarty objected to the report on legal grounds stated. Finally a decree was rendered which was for $125 in money to be paid to McCarty, and that the Railway Co. should fence his land, on each side of the track, prior to the time when they commenced running their cars on the road. The decree recites that the case came up regularly for hearing on the objections to the report of the viewers by McCarty, and by consent of parties it was rendered as above described. The plaintiff in error insists that the record and decree ought not to have been received in evidence on four different grounds, namely:

1. That the proceeding was against several persons, while the law only authorized it against each person separately.

2. The land was not sufficiently described in the petition. McCarty's land was described as a certain quarter-section, while the land reported by the viewers was only fifty acres of that quarter-section.

3. An interested man (Yorke,) was appointed one of the viewers.

4. That there could be no appearance of a corporation in the court but by an attorney, and that an attorney cannot bind his principal by any such consent as the decree recites.

For these reasons it is urged that the decree is void, the court having no jurisdiction of the corporation, and no power to render such a decree.

The first three grounds above specified may be disposed of by a single remark. There was no issue made up that would

1. Issue; pleading proof.

authorize a consideration of them. The petition alleged the judgment; the answer was a general denial, and several clauses of the statute of limitations. So far as the statute of limitations is concerned, it disappears from the case. Now if it is conceded that the general denial was sufficient to put the existence of the judgment in question, it did not raise any question as to the regularity of the

proceedings on which it was founded. The only question that could by any possibility be raised on that issue would be whether there was such a judgment. This reason alone disposes of these three objections. Quite as valid a one might be given that none of the three questions could be raised except on direct proceedings in error. A judgment is conclusive and final until reversed. The peace of society requires that there should be some end to litigation. It is possible that a third reason might be given, quite as satisfactory, but two surely are enough.

The fourth objection requires a separate examination, because it not only goes to the admission of the judgment, but also to what effect shall be given to it. It is pretended that the district court had not jurisdiction of the proceedings to condemn the land; that the attorney for the corporation had no authority to consent to a decree for any other compensation than of money; that he could not stipulate that the corporation should, as a condition to getting the right of way through McCarty's land, build a fence along their track through his land. The record of the proceedings does not show that the corporation consented by its attorney, or that the stipulation as to the fence was made by an attorney; it recites that the decree was so rendered by the consent of the corporation itself, and of McCarty. To avoid this, the counsel for the plaintiff in error say that the corporation could appear only by attorneys. Suppose this is conceded, and also that the attorney had no power to make a stipulation of the character represented in the decree in this case for the condemnation of the land, and it does not by any means follow that the corporation did not consent to the decree as it was made. This judgment or decree was between the same parties; and upon another proceeding every presumption is to be indulged that would support it. In this case there is not even a presumption necessary. The corporation *consented* to the decree. That consent was matter of evidence on the trial of the case. It must have appeared by legal and competent evidence. That evidence did not become a part of the record. If the attorney had no right to make such a stipulation, or to give such a consent, the fact must have

*2. Corporation; appearance; attorney.*

appeared in some other way that was legal and satisfactory. We by no means intend to decide that even if the consent was made by an attorney, it would invalidate the judgment in this case. When that question arises it will be time enough to consider it. The corporation was in court on its own motion, and on proceedings instituted by itself. By the decree in the case it obtained all the right it has and which it is using over the land of McCarty. If the decree is illegal, the plaintiff in error is a mere trespasser.

But it is insisted that the decree as to the fence is erroneous. That may be so. It may be that the plaintiff in error has got its right of way over McCarty's land, and can avoid the com-

3. Judgment; conclusive; when entire. pensation decreed for that right of way so far as that compensation consists of anything other than money; that it is not estopped by its solemn consent made of record from performing a part of a decree, and claiming the benefit of another part of the same decree, a part which would probably have never been made but for the part which it attempts to repudiate. All these questions would arise on review on error. If it was then determined that the decree was erroneous the case could be sent back; and if McCarty was entitled to more than the amount awarded him in money he could get, on a retrial, that for which the court, instead of money, gave him compensation in protecting his land. The court that rendered the judgment had jurisdiction of the parties, and the subject-matter; and until reversed the judgment is final and conclusive. The judgment is not evidence of a contract; it is the recorded decision of a court having jurisdiction, in the course of regular proceedings, under a law which authorized the court "to make such orders, and take such other steps as will promote the ends of justice between the owners of such lands, and said company." If the court erred in the manner of settling the question of damages and giving relief, (which is not admitted,) it is an error that cannot be examined under the issues presented in this case.

Having thus disposed of the main point in the case we

Kansas Pacific Rly. Co. v. Streeter.

proceed to notice those that are alleged to have occurred on the trial. It is suggested that the petition does not make an exhibit of the record of the judgment sued on, as required by the code, and that there is no allegation that the judgment was " duly given or made." The attention of the court below was not called to these matters, and they cannot be successfully raised here for the first time.

The plaintiff in error asked a series of instructions most of which were based upon the supposed invalidity of the decree of December, 1863, which the court correctly refused to give. The court then substantially charged on the same points, that if the defendant in error had proved that he had sustained damages at the hands of the road, and that such loss had occurred by reason of the neglect of the Railroad Company to build the fence along both sides of its track as far as it run through the plaintiff's land, then for such loss to the extent to which it was proved he was entitled to recover, but in no event could he recover for any loss an amount greater than he had alleged in his petition. This we think was correct ruling. If the loss was the direct result of the neglect of the plaintiff in error, it is but right and law that he who did the wrong should make it good.

The judgment is affirmed.

VALENTINE, J., concurring.

BREWER, J., not sitting.