No. 126,441

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KIMBERLY JACKSON,
*Appellant*,

v.

JOHNSON COUNTY and BOARD OF JOHNSON COUNTY COMMISSIONERS,
*Appellees*.

SYLLABUS BY THE COURT

1.

In determining whether a motion to modify a workers compensation award will be granted under K.S.A. 44-528(a), the Administrative Law Judge (ALJ) must make a threshold discretionary determination of whether good cause exists to review the award. It is only if the ALJ finds that good cause supports review that the matter will proceed to a final determination on modification of the award or reinstatement of a prior award.

2.

Determining whether good cause exists to review a workers compensation award under K.S.A. 44-528(a) is different from the discretionary decision to modify the award or reinstate an award. As part of this threshold inquiry, the ALJ should consider the entire record and what is reasonable under the totality of the circumstances.

Appeal from Workers Compensation Appeals Board. Submitted without oral argument. Opinion filed June 21, 2024. Affirmed.

*Daniel L. Smith*, of Ankerholz and Smith, of Overland Park, for appellant.

*Frederick J. Greenbaum* and *Aaron J. Greenbaum*, of McAnany, Van Cleave, & Phillips P.A., of Kansas City, for appellees.

Before ARNOLD-BURGER, C.J., ATCHESON, J., and TIMOTHY G. LAHEY, S.J.

ARNOLD-BURGER, C.J.:  Kimberly Jackson appeals the Workers Compensation Appeals Board (Board) decision denying her request for modification of her workers compensation award. She sought modification on the grounds that her award was inadequate and that her permanent disability and impairment had increased.

The Administrative Law Judge and the Workers Compensation Appeals Board found Jackson had failed to show "good cause" as a threshold requirement under K.S.A. 44-528(a) for modification of her award and denied the request for that reason. Jackson has appealed.

Because we find that a finding of good cause is required before the ALJ can modify a prior award and the Board did not abuse its discretion in finding under these facts there was no good cause to review the award, we affirm the Board's decision.

FACTUAL AND PROCEDURAL HISTORY

Because our decision rests primarily on the interpretation of a statute and the procedural posture of this case, a detailed recitation of the facts surrounding Jackson's injury and various medical findings is not necessary. Jackson was injured while she was an employee of Johnson County. Johnson County contended that Jackson's injuries were covered by the Kansas Workers Compensation Act, K.S.A. 44-501 et seq., (Act) and paid her accordingly. Jackson asked the Division of Workers Compensation (Division) to find that her injury was not compensable under the Act because, she asserted, a colleague injured her on purpose during Jackson's unpaid lunch hour. After failing to present any

2

medical evidence, challenge the disability award, or appeal it, she sought to later modify the award by challenging its adequacy.

The facts will be established as they relate to each issue examined.

ANALYSIS

I.    A CLAIM WITH THE DIRECTOR OF WORKERS COMPENSATION IS MADE WHEN THERE IS A DISPUTE ABOUT BENEFITS

When an employee suffers personal injury arising out of and in the course of employment, the employer must pay compensation to the employee in accordance with and subject to the Act. This includes, for example, medical bills and resultant wage loss. Not every work-related injury goes to a hearing before an ALJ. It is only when the employer or insurance company and the employee disagree upon anything related to workers compensation benefits that an application is filed with the director of workers compensation (Director) for a determination of compensation or benefits. K.S.A. 44-534(a). The burden of proof is on the claimant to establish the claimant's right to an award of compensation and to prove the conditions on which the claimant's right depends. K.S.A. 44-501b(c).

Once a request for a determination is filed with the Director, it is assigned to an ALJ for a hearing. The ALJ is required to "hear all evidence in relation thereto and to make findings concerning the amount of compensation, if any due to the worker." K.S.A. 44-534(a). There is also a statute of limitations for filing a request for determination or claim. The claim must be on file "within three years of the date of the accident or within two years of the date of the last payment of compensation, whichever is later." K.S.A. 44-534(b).

3

II.     JACKSON FILED A CLAIM WITH THE DIRECTOR CLAIMING HER INJURY WAS TO THE "BODY AS A WHOLE"

Jackson's injury occurred on August 11, 2016. She applied for a hearing, as described above, on February 10, 2017. In filling out the form, she stated that her foot and ankle were injured by assault and that her injury was of the "Body as a whole." Nothing on the face of her claim suggested she was asking the Director to decide whether she should be covered by the Act at all.

A preliminary hearing was held on March 8, 2017. At that hearing the ALJ stated that "Claimant alleges that she met with personal injury from an accident arising out of and in the course of her employment" and that she was only seeking a change in the authorized health care provider. The ALJ granted the request.

Another preliminary hearing was held over a year later, on May 23, 2018. At this hearing Jackson claimed for the first time that her injury was not compensable under the Act. She claimed the injury was caused by an assault during her unpaid lunch hour. Jackson also asserted that she still needed additional medical treatment, but not within the workers compensation system. After reviewing the record provided by the parties, the ALJ declined to rule on whether the claim was compensable under the Act. He found that the issue could be addressed at the regular hearing, but the *preliminary* hearing, as outlined in K.S.A. 44-534a(a), is limited to the issues of the furnishing of medical treatment and the payment of temporary total or temporary partial disability compensation. There was no dispute that Johnson County had paid Jackson 16.57 weeks of temporary total disability compensation which it even voluntarily supplemented. So Jackson saw no reduction in her monthly income. There is also no dispute that all medical expenses were paid up to that time, so there was nothing to resolve by preliminary hearing.

4

III.     JACKSON ASSERTS THAT HER INJURIES ARE NOT COVERED BY THE ACT AND ABANDONS ANY CLAIM OF BENEFITS RELATED TO HER INJURIES

The "[r]egular" or final hearing was held on January 29, 2019. At the start of the hearing, the ALJ stated that the issues to be decided were whether the incident was the prevailing factor in Jackson's injuries and whether Jackson's injuries were compensable under the Act. This was the only hearing scheduled on Jackson's claim and there was no stipulation or even request that it be bifurcated. This was the only opportunity for Jackson to bring forward any dispute about benefits to be paid. And, as already stated, she bore the burden of proof to establish her right to an award of compensation and to prove the conditions on which her right depends. K.S.A. 44-501b(c).

Yet, Jackson's counsel stated that it was unnecessary for the ALJ to make a prevailing factor determination because Jackson was "not seeking any benefits" and was simply asking the ALJ "to find that the case is not compensable." Jackson's counsel also stated that the ALJ need not determine the nature and extent of Jackson's disability. For these reasons, Jackson's attorney said, "medical evidence [was] irrelevant to any of the issues before the court." This appears to be a concession that Jackson had no disagreements with Johnson County over benefits, only over whether her injuries fell under the Act.

Accordingly, the only evidence the ALJ considered at the hearing—because Jackson presented none—was a deposition of Jackson taken in May 2018. In her deposition, Jackson described the August 2016 workplace incident and the later problems with her foot, ankle, knee, and lower back—including several surgeries. Jackson also testified that she sustained a mental injury because of the incident. She described feeling a lot of anxiety and experiencing panic attacks and regularly seeing a counselor. Jackson stipulated that she was not seeking temporary disability benefits (she had received them),

5

stipulated that her medical expenses had been paid, and that she was not seeking any future medical treatment.

The ALJ found that Jackson's injuries were compensable under the Act and awarded no permanent disability benefits or future medicals because Jackson did not request any.

IV.    DECISIONS OF THE ALJ MAY BE APPEALED TO THE BOARD AND JACKSON DID SO

The Board was established by statute to sit as an appellate tribunal over decisions by the ALJ under the Act. The Board has jurisdiction to review all decisions, findings, orders, and awards of compensation by the ALJ. And, just as this court does, the Board reviews questions of law and fact by simply reviewing the record before the ALJ. K.S.A. 44-555c(a).

Jackson appealed the ALJ ruling to the Board, but only asked the Board to review whether the injury arose out of and in the course of her employment. She also asked the Board to find that limiting her ability to sue violated her due process rights. By only appealing one issue, Jackson abandoned any claim related to the ALJ's award regarding benefits or any claim to a disability determination different from the one awarded by the ALJ. See *Garcia v. Tyson Fresh Meats, Inc.*, 61 Kan. App. 2d 520, 525, 506 P.3d 283 (2022) ("A party has an obligation to advance a substantive argument in support of their position and buttress it with pertinent authority or risk a ruling that the issue is waived or abandoned.").

The Board agreed with the ALJ and held that Jackson's injury arose out of her employment. It also found that it could not consider constitutional issues. Jackson did not appeal the Board's decision.

6

V.  JACKSON MOVED TO MODIFY THE ALJ AWARD, WHICH WAS DENIED BY BOTH THE ALJ AND THE BOARD

Modification of a workers compensation award is governed by K.S.A. 44-528(a), which provides that any award may be reviewed by the ALJ "for good cause shown" upon application of the employee. Once reviewed, and after a hearing, the ALJ may modify the award. The statute seeks to recognize that a worker's situation may change after an award is ordered. The worker may get considerably better, justifying a modification on behalf of the employer or may get considerably worse, justifying modification on the part of the employee. "'The statute was enacted to meet such [a] situation and its provisions safeguard the welfare of the workman as well as the employer.'" *Gile v. Associated Co., Inc.* 223 Kan. 739, 740, 576 P.2d 663 (1978).

A few months after the Board denied her appeal from the ALJ's decision, Jackson filed a request for modification and review of the award under K.S.A. 44-528(a). She sought modification on the grounds that her award was inadequate and that her permanent disability and impairment had increased. Jackson presented evidence that she suffered a 25% permanent physical disability and a 50% permanent psychological disability. A hearing was held on the motion, and both Jackson and Johnson County submitted additional medical testimony and Jackson testified in person.

The ALJ found that Jackson failed to establish good cause to modify her original award. The ALJ rejected Jackson's argument that good cause is shown whenever an award is inadequate and permanent disability and impairment have increased. Instead, as a matter of statutory interpretation, the ALJ concluded that the good cause requirement was separate and distinct from the other criteria listed in the statute (such as adequacy or increased impairment) and that the good cause determination was a threshold determination left to the court's discretion. The ALJ concluded there was no good cause under the facts presented that would warrant a modification of the award.

7

The Board agreed with the ALJ incorporating much of the ALJ's reasoning and found, after a thorough analysis, that Jackson had not established good cause to modify the award. Jackson filed this appeal.

VI.  GOOD CAUSE IS A THRESHOLD INQUIRY FOR MODIFICATION OF AN AWARD UNDER K.S.A. 44-528(a)

Jackson argues that the Board erred in interpreting K.S.A. 44-528(a) as containing a threshold review for good cause before proceeding to a modification determination. Resolution of this issue requires statutory interpretation. Interpretation of the Act presents a question of law subject to unlimited review. *EagleMed v. Travelers Insurance*, 315 Kan. 411, 420, 509 P.3d 471 (2022).

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should avoid reading something into the statute that is not readily found in its words. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language is ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *Johnson v. U.S. Food Service*, 312 Kan. 597, 600-01, 478 P.3d 776 (2021).

A. *The plain language of the statute reveals a legislative intent to create a threshold determination of good cause before granting a hearing on a motion to modify an award.*

The statute informs us that any award "may be reviewed" by the ALJ "for good cause shown" upon application of the employee. The statute then explains the review process.

> "In connection with such review, the [ALJ] may appoint one or two health care providers to examine the employee and report to the [ALJ]. The [ALJ] shall hear all competent evidence offered and if the [ALJ] finds that the award has been obtained by fraud or undue influence, that the award was made without authority or as a result of serious misconduct, that the award is excessive or inadequate or that the functional impairment or work disability of the employee has increased or diminished, the [ALJ] may modify such award, or reinstate a prior award." K.S.A. 44-528(a).

Jackson argues that good cause exists any time one of the factors listed in the third sentence of the statute exists. In her case, that would include her assertions that the award was inadequate and that her impairment increased. In other words, as long as Jackson pleads that the award was inadequate or her impairment has increased, she has a right to proceed to a hearing and a ruling on modification. We disagree.

We start with the plain language of the statute. Examination reveals that it uses different modal auxiliary verbs in each sentence—a difference that aids us in determining legislative intent. See Webster's New World College Dictionary 939 (5th ed. 2018) (modal auxiliary is "an auxiliary verb that is used with another verb to indicate its mood, as *can*, *could*, *may*, *might*, *must*, *shall*, *should*, *will*, and *would*").

In the first sentence, the statute says that the ALJ "may" review an award for good cause. K.S.A. 44-528(a). "The word 'may' in a statute typically signals that the decision is

9

a discretionary one, not an entitlement." *Caporale v. Kansas Behavioral Sciences Regulatory Bd.*, 50 Kan. App. 2d 1155, 1159, 338 P.3d 593 (2014).

The statute then provides that "[i]n connection with such review" the ALJ can appoint health care workers to examine the employee and report to the ALJ. K.S.A. 44-528(a). This sentence would be a follow up to the discretionary action by the ALJ in the first sentence. So if the ALJ decides to review the award, then the ALJ is allowed to appoint health care workers to examine the employee.

In the third sentence, the statute says the ALJ "shall hear all competent evidence offered." K.S.A. 44-528(a). The word shall is generally interpreted as mandatory. See *City of Atchison v. Laurie*, 63 Kan. App. 2d 310, 318, 528 P.3d 1007 (2023) (listing factors to consider when determining whether the use of the word "shall" is mandatory or directory). Only if the ALJ finds, as it applies here, that the initial award was inadequate or that the claimant's disability increased does the statute provide that the ALJ "may" modify the award. K.S.A. 44-528(a).

In summary, the ALJ *may* review an award and the ALJ *may* then modify an award. But it may only exercise its discretion to modify an award if it finds (as it relates to these facts), after a mandatory review of all the evidence, that the award was inadequate, or the impairment has increased.

To interpret the statute as Jackson suggests—requiring the ALJ must review an award when there is merely a claim that it is, for example, inadequate—renders the first sentence meaningless. There would be no purpose for the first sentence and the interpretation would be the same if it were completely omitted. To reach the interpretation used by Jackson, the statute need only provide the circumstances upon which an award can be modified at the discretion of the ALJ. "The court should avoid interpreting a statute in such a way that part of it becomes surplusage." *State v. Van Hoet*,

10

277 Kan. 815, 826-27, 89 P.3d 606 (2004); see *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 479, 509 P.3d 1211 (2022).

In sum, the Legislature's decision to use "may" in some places and "shall" in others in K.S.A. 44-528(a) is significant. The use of both "may" and "shall" in the same statute is an indicator that the Legislature intended the word "may" to carry its ordinary meaning—a discretionary decision, not an entitlement. See *Caporale*, 50 Kan. App. 2d at 1160. Moreover, to interpret the statute in the way suggested by Jackson renders the first sentence meaningless or mere surplusage.

This leads us to conclude that the plain language of the statute reveals a legislative intent that the ALJ make a threshold inquiry as to whether there is good cause to review the case for possible modification. Granted, a claimant may submit evidence to the ALJ that the award was inadequate or based on fraud as a path to the finding of good cause to review the claim, but merely making the claim does not mandate that the ALJ review the award and set it for an evidentiary hearing. There may be other factors that demand consideration that are included in this discretionary determination of good cause. Those will be discussed later in this opinion.

B. *This interpretation also aligns with the Act as a whole.*

The legislative decision to set a threshold good cause inquiry for modification of a final award also makes sense in terms of the Act as a whole. The Act provides "a comprehensive set of statutes that define the rights of employees to compensation for work-place injuries and the procedures they must follow to obtain compensation." *Cincinnati Insurance Co. v. Karns*, 52 Kan. App. 2d 846, 849, 379 P.3d 399 (2016). To that extent, the Act is a self-contained legislative scheme. While employers must pay compensation to employees whose injuries are covered by the Act, the employee has the

11

burden of proof in "establish[ing] the claimant's right to an award of compensation and to prove the various conditions on which the claimant's right depends." K.S.A. 44-501b(c).

Under this scheme, the payment of a compensation award is a final judgment that cannot later be modified or dissolved by judicial fiat. *Acosta v. National Beef Packing Co.*, 273 Kan. 385, 394, 44 P.3d 330 (2002). The good cause requirement serves as a gatekeeper to protect the finality of judgments and discourage the piecemeal determination of claims. See *Dunlap v. State*, 221 Kan. 268, 270, 559 P.2d 788 (1977) ("The time consumed and wasted by piecemeal litigation impedes the dispatch of business in the courts.").

This is further supported by the statutory appeal process. The Act not only provides an employee or employer the right to file a claim if there is a disagreement over benefits, but it also provides them with the opportunity for a comprehensive hearing and review of medical records. And if a party is dissatisfied with an ALJ's determination of the worker's benefits, they may appeal to the Board. K.S.A. 44-551(l)(1). If a party is dissatisfied with the Board's decision, they may appeal to this court. K.S.A. 44-556. This procedure would be meaningless if a claimant could simply use the modification process to replace an appeal. Requiring the ALJ to make a threshold determination of good cause ensures that the claim is not one that could have been raised at the time of the regular hearing or the subject of a timely appeal, even if the allegation is one of the listed bases for modification.

For these reasons, the Board did not err in its interpretation of K.S.A. 44-528(a)'s good cause requirement. Jackson was required to show good cause for review and modification before the Board considered whether her initial award was inadequate or that her impairment increased.

VII.    THE BOARD DID NOT ABUSE ITS DISCRETION IN DENYING JACKSON'S
        MODIFICATION REQUEST

After finding that good cause is a threshold inquiry, we must address whether the Board erred in finding that Jackson did not establish good cause to proceed to a hearing on her claim.

Because the good cause inquiry is discretionary, we review the Board's decision for an abuse of discretion. Decisions by the Board are reviewed under the Kansas Judicial Review Act, which provides that relief shall be granted if an agency's discretionary decision is "unreasonable, arbitrary or capricious." K.S.A. 77-621(c)(8).

A.  *What is good cause?*

Good cause is a phrase common in the Kansas statutes. It is usually not given any further definition, although at times what constitutes good cause is set out in detail in a statute. See K.S.A. 16-1306 (what constitutes good cause to cancel outdoor power equipment agreements). The phrase suggests a desire to give a court flexibility in decision making. Black's Law Dictionary defines "good cause" as simply "[a] legally sufficient reason." Black's Law Dictionary 274 (11th ed. 2019). The United States Supreme Court has noted that the term "cause" is a broad and general standard and a more specific definition would be impracticable given the "infinite variety of factual situations [that] might reasonably justify" a judicial action based on cause. *Arnett v. Kennedy*, 416 U.S. 134, 161, 94 S. Ct. 1633, 40 L. Ed. 2d 15 (1974). The Tenth Circuit has defined cause by what it is not. "A discharge for cause is one which is not arbitrary or capricious, nor is it unjustified or discriminatory." *Weir v. Anaconda Co.*, 773 F.2d 1073, 1080 (10th Cir. 1985).

13

The Board considered the definition of good cause adopted in other types of cases and adopted a standard of review for good cause that "considered the entire record and all circumstances, including fairness, the interest of justice, reasonableness, good faith and the ALJ's discretion in the first instance" before finding that Jackson failed to establish good cause. We find no fault with the Board's approach to defining good cause.

B. *The Board found that Jackson failed to establish good cause for the ALJ or the Board to review her motion to modify her workers compensation award.*

The Board independently and through its incorporation and affirmance of the ALJ's decision then determined whether Jackson had established good cause for the ALJ to review her award.

But first, the Board noted that Jackson presented no argument before it as to why good cause existed to review her appeal. Likewise, on appeal, Jackson devotes only one sentence regarding the Board's discretionary decision: "The failure of the Board's order to modify the 2019 award and grant compensation benefits to claimant for permanent disability for the injuries for the 2016 assault constitutes an abuse of discretion." She makes no effort to argue how the Board or the ALJ erred in its rejection of a finding of good cause if it is, in fact, a threshold determination. Generally, we declare issues that are not adequately briefed to be waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018). And we continue that practice here. The Board held that Jackson was "using the review and modification proceeding to do what she should have done in the regular hearing. The review and modification process is not meant to be a 'redo' or a second regular hearing." This finding is supported by the evidence.

Through the regular hearing process, Jackson not only had the opportunity to present evidence on permanency, but she was *required* to do so. K.S.A. 44-523(b) (claimant must submit all evidence in support of their claim no later than 30 days after

14

the regular hearing unless a continuance is granted). Jackson knew that her claim was potentially covered by the Act, and she had the burden of proof if it was. But she took a strategic risk and chose not to present any evidence of benefits due. If she felt the Board misunderstood her request and that she was entitled to the benefits she now alleges are due, she could have appealed the Board's decision to this court.

An ill-conceived or poorly executed litigation strategy yielding unsatisfactory results does not amount to good cause to modify a workers compensation award under K.S.A. 44-528(a). The law typically imputes a lawyer's strategic decisions—good or bad—and their attendant consequences to the client. See *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633-34, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962); *Meyer v. Meyer*, 209 Kan. 31, 39, 495 P.2d 942 (1972); *Myers v. Kansas Bd. of Healing Arts*, No. 121,767, 2020 WL 6815540, at \*33 (Kan. App. 2020) (unpublished opinion) (Atcheson, J., concurring). To allow what amounts to a do-over here would both deviate from that rule and stray far from the purpose of K.S.A. 44-528(a) as a check on the vagaries of medical prognostication. And that is enough to affirm the Board.

CONCLUSION

In sum, we find that determining whether good cause exists to review a workers compensation award under K.S.A. 44-528(a) is different from the discretionary decision to modify the award or reinstate an award. As part of this threshold inquiry, the ALJ should consider the entire record and what is reasonable under the totality of the circumstances. Under these facts, and in the absence of any argument related to whether good cause existed, we find that the Board did not abuse its discretion in denying Jackson's request to modify the award.

15

The decision of the Board denying Jackson's request for modification of her 2019 workers compensation award is affirmed.

Affirmed.